IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| MILDRED REED, | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | Civil Action No. H-12-3255 |
| | § | |
| SOUTHWEST CREDIT SYSTEMS, L.P., | § | |
| *Defendant*. | § | |

**PLAINTIFF MILDRED REED'S RESPONSE TO
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

**I.     Nature and Stage of This Proceeding**

This is an action filed under the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.*  The parties have agreed to proceed with cross-motions for summary judgment on an expedited schedule [Doc. #15]. Plaintiff Mildred Reed ("Ms. Reed") moved for summary judgment on March 26, 2013.  [Doc. #18].  Defendant Southwest Credit Systems, L.P. ("Southwest") also moved for summary judgment on March 26, 2013.  [Doc. #17].  Ms. Reed now files her response to Southwest's motion for summary judgment.

**II.     Statement of the Issues**

Constitutional standing requires that complaining party allege an injury in fact, which includes the invasion of a statutory right.  The FDCPA confers standing upon any person that is subjected to a potentially improper debt-collection attempt.  Given that Ms. Reed was subjected to a potentially improper (and in fact improper) debt-collection attempt, does Ms. Reed have standing to bring this action?

1

The FDCPA is to be interpreted from the objective perspective of the least sophisticated consumer.  Given that Spanish speakers represent a significant portion of the U.S. population and given that Southwest admits that it targeted Spanish-speakers by including statements in Spanish, does the objective least sophisticated consumer standard include the Spanish-speaker?

The FDCPA demands that a debt collector, in its initial communication or within five days thereafter, meaningfully convey the notices required by 15 U.S.C. § 1692g(a).  Given that the Court must interpret Southwest's initial communication from the perspective of the objective least sophisticated consumer, has Southwest meaningfully conveyed the notices required by 15 U.S.C. § 1692g(a) when it targets Spanish speakers yet fails to include the required notices in Spanish?

The FDCPA also proscribes the overshadowing of the notices required by 15 U.S.C. § 1692g(a).  Given that Southwest's initial communication failed to provide the notices required by 15 U.S.C. § 1692g(a) in Spanish and instead directed the Spanish speaker to call Southwest to arrange payment, has Southwest violated 1692g(b) by encouraging the Spanish speaker to waive her FDCPA rights?

**III.    Standard of Review**

Plaintiff expressly incorporates the standard of review section contained in her motion for summary judgment.

**IV.    Summary of Argument**

This case is not about the subjective reaction of Ms. Reed to Southwest's debt-collection letter—a consumer's subjective reaction to a debt-collection attempt is irrelevant to whether that attempt violates the FDCPA.   What is determinative is whether that debt-collection letter violates the FDCPA from the perspective of the objective, least sophisticated consumer.

This Court must consider the perspective of an objective, Spanish-speaking consumer when making its determination.   Spanish speakers make up a significant portion of the population, and therefore this Court cannot ignore their perspective.   In fact, more than thirty-seven million U.S. residents use Spanish in their homes and more than 15 million of those U.S. residents do not have a firm grasp on the English language.   These numbers alone suggest that courts should *always* consider the Spanish-speaking consumer perspective when determining whether a debt-collection attempt violates the FDCPA.   But this Court does not need to make such a sweeping decision today because there is another important reason to include the Spanish-speaking consumer perspective: Southwest's initial communication specifically targets the Spanish-speaking consumer by including statements in the Spanish.

Once the Court properly views Southwest's initial communication from this perspective, Southwest's violations are obvious.   Although Southwest targets Spanish speakers, it fails to convey the notices required by 15 U.S.C. § 1692g(a) in Spanish.   To make matters worse, instead of providing these notices in Spanish, Southwest directs the Spanish-speaker to call and arrange payment.   This is a clear violation of 15 U.S.C. § 1692g(a) and (b), and therefore this Court should enter judgment in favor of Ms. Reed as a matter of law.

3

**V.      Ms. Reed Has Standing Because She Was Subjected To Potentially Illegal (And In Fact Illegal) Debt-Collection Attempts.**

Southwest contends that Ms. Reed lacks standing pursuant to Article III of the Constitution because she did not sustain actual damages as a result of Southwest's violations of the FDCPA.  This argument—which would have far reaching consequences throughout the entire legal system if adopted—fails.[1]  It ignores the plain text of the FDCPA, which confers standing upon aggrieved consumers and does not require actual damages.  And, it is wholly contrary to case law throughout the country establishing that a debtor has standing to sue under the FDCPA even if she has not suffered actual damages.

**A.      Standing Under Article III Can Be Created By Statute.**

"In essence the question of standing is whether the litigant is entitled to have the court decide the merits of the dispute or of particular issues."  *Warth v. Seldin*, 422 U.S. 490, 498 (1975).  "Although standing in no way depends on the merits of the plaintiff's contention that particular conduct is illegal . . . it often turns on the nature and source of the claim asserted." *Id.* at 500.  "The actual or threatened injury required by Art. III may exist solely by virtue of 'statutes creating legal rights, the invasion of which creates

---

[1]  Southwest's standing argument is purely constitutional.  Southwest does not argue that Ms. Reed lacks prudential standing, and the prudential standing requirement is readily satisfied here because Ms. Reed's claims clearly fall within the zone of interest protected and regulated by the FDCPA.  The "zone of interest" test is intended to "exclude only those whose interests are so marginally related to or inconsistent with the purposes implicit in the statute that it cannot reasonably be assumed that Congress intended to permit the suit."  *Nat'l Ass'n of Home Builders v. U.S. Army Corps of Engineers*, 417 F.3d 1272, 1287 (D.C. Cir. 2005).

standing.'" *Id.* (quoting *Linda R.S. v. Richard D.,* 410 U.S. 614, 617 n. 3, 93 S.Ct. 1146, 35 L.Ed.2d 536 (1973)).

     **B.**    **The FDCPA Confers Standing Upon Consumers, Like Ms. Reed, Who Were Subjected To Potentially Improper Debt-Collection Practices.**

A consumer authorized to bring suit pursuant to the FDCPA is defined by the Act as "any natural person obligated or alleged to be obligated to repay a debt." 15 U.S.C. § 1692a(6). Hence the plain language of the FDCPA itself establishes that consumers whose statutory rights under the Act have been violated have standing to pursue FDCPA claims in an appropriate forum. The statute broadly provides for civil liability against "any debt collector who fails to comply with *any* provision of [the FDCPA] with respect to *any* person." *Muir v. Navy Federal Credit Union*, 529 F.3d 1100, 1107 (D.C. Cir. 2008). Given that a sufficient "injury" exists to establish standing to pursue FDCPA claims even when the debt collector did not communicate directly with the debtor about the matter, *id.* at 1106, it surely exists where, as here, Southwest concedes that it communicated directly with Ms. Reed.

In fact, the "mere receipt of a debt collection letter that potentially violated the FDCPA is sufficient to establish standing." *Ehrich v. I.C. System, Inc.*, 681 F.Supp.2d 265, 270 (E.D.N.Y. 2010); *see also Prophet v. Meyers*, No. H-08-0492, 2009 WL 1437799, at * 4 (S.D. Tex. May 21, 2009) (stating that a non-debtor has standing if the violative debt-collection practices were directed towards the plaintiff).

**C.     The FDCPA Confers Standing Regardless Of Whether The Consumer Has Actual Damages.**

Given that countless appellate and district courts have rejected the very argument that Southwest advances, it is not surprising that Southwest has not pointed to any authority that states that a consumer lacks standing to pursue claims against a debt collector pursuant to the FDCPA when she was subjected to the debt collector's violative practices.

The Second, Sixth, Seventh, Ninth, and Tenth Circuits have held unequivocally that a debtor who has been subjected to allegedly improper debt-collection efforts has constitutional standing to assert a claim under the FDCPA—regardless of whether she sustained actual damages.  *See Federal Home Loan Mortg. Corp v. Lamar,* 503 F.3d 504, 513 (6th Cir. 2007) ("a consumer may recover statutory damages if the debt collector violates the FDCPA even if the consumer suffered no actual damages"); *Robey v. Shapiro, Marianos, & Cejda, LLC,* 434 F.3d 1208, 1212 (10th Cir. 2006) ("'injury in fact' analysis for purposes of Article III is directly linked to the question of whether [plaintiff] has suffered a cognizable statutory injury under the FDCPA"); *Miller v. Wolpoff & Abramson, LLP,* 321 F.3d 292, 307 (2d Cir. 2003) ("FDCPA ... permits the recovery of statutory damages up to $1,000 in the absence of actual damages. Thus, Courts have held that actual damages are not required for standing under the FDCPA."); *Keele v. Wexler,* 149 F.3d 589, 593 (7th Cir. 1998) ("The FDCPA does not require proof of actual damages as a precursor to the recovery of statutory damages."); *Baker v. G.C. Servs. Corp.,* 677 F.2d 775, 780–81 (9th Cir. 1982) (same).

District courts throughout the country likewise have repeatedly rejected the argument that standing to bring an FDCPA claim requires actual damages. *See, e.g.*, *Muldrow v. EMC Mortg. Corp.*, 766 F. Supp. 2d 230, 235 n.1 (D.D.C. 2011); *Ehrich v. I.C. Sys., Inc.*, 681 F. Supp. 2d 265, 269-70 & n.6 (E.D.N.Y. 2010); *McCammon v. Bibler, Newman & Reynolds, P.A.*, 493 F. Supp. 2d 1166, 1171 (D. Kan. 2007); *Barows v. Chase Manhattan Mortg. Corp.*, 465 F. Supp. 2d 347, 354 (D.N.J. 2006); *Wyatt v. Creditcare, Inc.*, No. 04-03681-JF, 2005 WL 2780684, at *3 (N.D. Cal. Oct. 25, 2005); *Palmer v. Stassinos*, 348 F. Supp. 2d 1070, 1087 (N.D. Cal. 2004); *Tyrell v. Robert Kaye & Associates, P.A.*, 223 F.R.D. 686, 690 (S.D. Fla. 2004); *Brooks v. Auto Sales & Services, Inc.* No. IP00-1467-C-M/S, 2001 WL 686950, at *7 (S.D. Ind. June 15, 2001); *Macarz v. Transworld Systems, Inc.,* 193 F.R.D. 46, 51 (D. Conn. 2000); *Talbott v. GC Services Ltd. Partnership*, 191 F.R.D. 99, 103-04 (W.D. Va. 2000); *Morgan v. Credit Adjustment Bd., Inc.* 999 F. Supp. 803, 805-06 (E.D. Va. 1998); *Villareal v. Snow,* No. 95 C 2484, 1996 WL 28254, at *2 (N.D. Ill. Jan. 19, 1996).

Referring to many of the cases cited *supra*, the district court in *Ehrich* aptly explained the rationale behind conferring standing upon debtors who have not suffered actual damages. The court explained that the FDCPA "broadens the traditional 'injury in fact' analysis by expanding the range and scope of injuries that create constitutional standing," such that "the 'injury in fact' analysis is directly linked to the question of whether plaintiff has suffered a cognizable statutory injury and not whether a plaintiff has suffered actual damages." 681 F. Supp. 2d at 269-70. The court recognized Congress' right to "enact statutes creating legal rights, the invasion of which creates [constitutional]

standing, even though no injury would exist without the statute," as validated by the Supreme Court in *Linda R.S. v. Richard D.,* 410 U.S. 614, 617 n. 3 (1973).  681 F. Supp. 2d at 269 n.6.  The court emphasized that the appropriate focus is on a debt collector's misconduct, not whether a plaintiff can demonstrate actual damages. *Id.* at 270.  Finally, the court noted that granting standing in FDCPA cases regardless of whether actual damages were incurred "facilitates an important goal of the FDCPA"—namely, it "enlists the efforts of sophisticated consumers . . . as 'private attorney generals' to aid their less sophisticated counterparts, who are unlikely to bring suit." *Id.*  Granting consumers the right to sue under the FDCPA without proof of actual injury is necessary means of implementing the private attorney general enforcement mechanism that is integral to the Act.[2]

## VI.   The Fact That Ms. Reed Does Not Read Spanish Is Irrelevant—Southwest's Letter Must Be Interpreted From The Perspective Of The Objective, Least Sophisticated Consumer.

When determining whether a particular debt-collection practice violates the FDCPA, the Court must review the debt-collection practice from the perspective of the objection, least sophisticated consumer.  *Gonzalez v. Kay*, 577 F.3d 600, 6003 (5th Cir. 2009).  Accordingly, the plaintiff's subjective reaction is irrelevant.  *See Ehrich*, 681 F.Supp.2d at 270 (*citing Jacobson v. Healthcare Financial Services, Inc*, 516 F.3d 85, 96

---

[2] For similar reasons, a plaintiff has standing to bring suit under the Telephone Consumer Protection Act ("TCPA") even if he suffered no actual harm because Congress created a "legally enforceable bounty system" for assistance in enforcing the TCPA.  *See Leyse v. Bank of America, Nat'l Ass'n,* No. 09 Civ. 7654, 2010 WL 2382400, at *3 (S.D.N.Y. June 14, 2010); *Landsman & Funk, P.C. v. Lorman Bus. Ctr., Inc.,* No. 08 Civ. 481, 2009 WL 602019, at *3 (W.D. Wis. Mar. 9, 2009).

(2d Cir. 2008)); *Clark v. Capital Credit & Collection Services, Inc.*, 460 F.3d 116, 1172, n. 7 (9th Cir. 2006) (finding that the subjective interpretations are not the focus of the inquiry"); *see also Tourgeman v. Collins Financial Services*, No. 8-CV-1392, 2011 WL 3176453, (S.D. Cal. July 26, 2011) ("the subjective impact of an allegedly misleading representation on a consumer is irrelevant.");

That is why a debt-collection letter may be unlawfully deceptive even though the plaintiff was not deceived. *See, e.g.*, *Gonzalez*, 577 F.3d 600, 611 ("Because we apply an objective standard, the question is not whether this *particular* consumer was *actually* deceived, but instead the question is whether the objective unsophisticated consumer would be deceived."); *Jacobson*, 516 F.3d at 91 ("In order to prevail it is not necessary for a plaintiff to show that she herself was confused by the communication she received."); *United States v. Nat'l Fin. Services, Inc.*, 98 F.3d 131, 139 (4th Cir. 1996) ("the test is the capacity of the statement to mislead; evidence of actual deception is unnecessary.").

That is why a debt-collection attempt may be unlawfully threatening even though the plaintiff did not feel threatened. *See, e.g.*, *Mailloux v. Arrow Financial Services, LLC*, 204 F.R.D. 38, 41-42 (E.D. N.Y. 2001) (finding that the court did not have to "make an individual determination of each potential class member's subjective understanding of the letter" as to whether it was a threat); *Newman v. Checkrite California*, 912 F.Supp. 1354, 1379 n. 37 (E.D. Cal. 1995) (finding that the objective least sophisticated consumer standard applies to the determination as to whether a statement or letter is threatening.).

And, directly on point to this natter, that is why the contents of a debt-collection communication may violate the FDCPA even though the particular plaintiff did not read, hear, or even receive the communication. *See, e.g.*, *Bartlet v. Heibl,* 128 F.3d 497, 499 (7th Cir. 1997) (finding that "reading" is not an element of an FDCPA violation); *Pawelczak v. Fin. Recovery Services, Inc.*, 11 C 2214, 2012 WL 5306307 (N.D. Ill. Oct. 26, 2012) (finding a class action that the court did not have to determine "who answered the phone or the length of time an individual heard [an allegedly violative] recoding."); *Herrera v. LCS Fin. Servs. Corp.*, 2011 WL 2149084, at *7 (N.D.Cal. June 1, 2011) ("[T]he simple act of mailing letters with allegedly misleading information constitutes a use of such prohibited language, and actual receipt is irrelevant to liability under the FDCPA." (internal quotation marks and citation omitted)); *Irwin v. Mascott*, 96 F.Supp.2d 968, 976 (N.D.Cal.1999) ("A debt collector violates the FDCPA by sending a notice containing unlawful provisions. Whether the notice is received is irrelevant to the issue of liability."). *Morgan v. Credit Adjustment Bd.*, 999 F.Supp. 803, 805 (E.D.Va. 1998) (FDCPA liability does not require showing the consumer read or received the dunning letter).

Southwest's focus on Ms. Reed's subjective reaction to the debt-collection letter is a red-herring argument that this Court must ignore. Instead, this Court must determine whether Southwest's debt-collection letter violated the FDCPA from the perspective of the objective, least sophisticated consumer.

**VII.  The Relevant Perspective Is The Least Sophisticated, Spanish-Speaking Consumer Because Spanish Speakers Represent A Significant Portion Of The U.S. Population And As Admitted By Southwest, Southwest Is Targeting Spanish Speakers.**

"While the FDCPA doesn't extend to every bizarre or idiosyncratic interpretation" of a debt collection letter, a Spanish-speaking consumer's interpretation would not qualify as such." *Ehrich*, 681 F.Supp.2d at 271 (citations omitted).  A significant portion of consumers in U.S. use the Spanish language.  In fact, in 2011, over thirty-seven million U.S. residents over the age of five used Spanish *at home*.  U.S. Census Bureau, *2011 American Community Survey: Table S1601*, attached hereto as Exhibit A).  This represents 12.9% of the U.S. population.  *Id.*  In addition, 43.7% of these thirty-seven million U.S. residents spoke English "less than well."  *Id.*  That means that over 15 million Spanish speakers do not have a firm grasp on the English language.

As admitted by Southwest, the violative language was directed toward to a Spanish-speaker.  [Doc. #17] ("By adding a different written language in a separate paragraph, **the paragraph was meant to convey information to a person who understood Spanish**.") (emphasis added).  But as explained in Ms. Reed's motion for summary judgment [Doc. # 18 § V(B), (C)] and will be explained in more detail below, the information conveyed to the Spanish speaker failed convey the notices required by 15 U.S.C. § 1692g(a); rather the information encouraged the Spanish speaker to waive her dispute rights, in violation of 15 U.S.C. § 1692g(b).

"Spanish-speaking consumers are a growing and vital part of America's economy. They deserve the same strong protection from abuse as other members of our society."  J.

11

Howard Beales, III, Director of the FTC's Bureau of Consumer Protection, *FTC Press Release, First FDCPA Enforcement Action Specifically Protecting Spanish-Language Consumers*, http://www.ftc.gov/opa/2002/04/unitedrecovery.shtm (last visited April 12, 2012).   Because Spanish speakers are entitled to protection under the FDCPA and because Southwest is directly targeting Spanish speakers[3], the relevant perspective for determining whether Southwest's letter violates the FDCPA is from the perspective of the least sophisticated, Spanish-speaking consumer.

## VIII.   Southwest's Written Communication Dated April 28 2012 Violates The FDCPA As A Matter Of Law, Entitling Ms. Reed—Not Southwest—To Summary Judgment.

Just as the debt-collection letter in *Ehrich* was found to violate 15 U.S.C. § 1692g(a) and (b), this Court should find that Southwest's initial communication with Ms. Reed violated 15 U.S.C. § 1692g(a) and (b) as  matter of law.   In *Ehrich*, the debt collector included a Spanish line in its initial communication, which translates to "If you have some questions regarding your account call 800/270-9420 and refer to your account number."   681 F.Supp.2d at 267 n. 1.   Even though the plaintiffs spoke English and the debt collector had provided the proper notices in English, the court found that the letter violated 15 U.S.C. § 1692g(a) and (b).   Here, Southwest's initial communication included a Spanish paragraph that in relevant part translates to "For assistance in Spanish, please call 1-800-248-9180 to arrange promptly for payment."   [Doc. #1-1].   By failing to

---

[3] If Southwest had not included any statements in Spanish, it would have a much stronger argument that the relevant objective perspective does not include the Spanish-speaking consumer; but by including statements in Spanish, Southwest was targeting Spanish speakers and thereby stepped into the proverbial labyrinth with out a map.

include the proper notices in Spanish and instead directing the Spanish speaker to call and arrange payment, this Court should find, just as the *Elrich* court found, that Southwest violated 15 U.S.C. § 1692g(a) and (b) as a matter of law.

**A.   Ms. Reed Is A "Consumer," Her Alleged Obligation Is A "Debt," And Southwest Is A "Debt Collector" As The FDCPA Defines Those Terms.**

The FDCPA defines "consumer" as "any natural person obligated or allegedly obligated to pay any debt."  15 U.S.C. § 1692a(3).  "Debt" is defined by the FDCPA as "any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes, whether or not such obligation has been reduced to judgment."  15 U.S.C. § 1692a(5).

Ms. Reed is a natural person allegedly obligated to pay money.  (See Declaration of Mildred Reed, attached hereto as Exhibit B).  Her obligation arises from an allegedly unpaid cellular telephone bill with AT&T.  *Id.*  Ms. Reed purchased this telephone for personal use.  *Id.*  She did not purchase the telephone for business use, nor did she use it for business use.  *Id.*  Ms. Reed is a "consumer" alleged to owe a "debt" as the FDCPA defines those terms.

The FDCPA defines a debt collector as: "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another."  15 U.S.C. § 1692a(6). Southwest has admitted that it is in "the business of attempting to collect

13

'debts' as defined by [15] U.S.C. § 1692[a](5)" and that it is a "debt collector" as defined by the FDPCA.  (Defendant's complete discovery responses, attached hereto as Exhibit C); *see also Compare* [Doc. #1 ¶8] *with* [Doc. #5 ¶8].

**B. Southwest's April 28, 2013 Communication Was Its Initial Communication With Ms. Reed And Although It Conveyed Information To The Spanish Speaker, It Failed To Convey The Notices Required By 15 U.S.C. § 1692g(a) To The Spanish-Speaking Consumer.**

As quoted in Ms. Reed's motion for summary judgment, the FDCPA demands that debt collectors provide certain written notices to consumers in the initial communication or within 5 days of thereof.  [Doc. #17 § V]; *see also* 15 U.S.C. § 1692g(a).  Congress included debt validation provisions in the FDCPA to guarantee that all consumers would receive adequate notice of their legal rights.  S. Rep. No. 382, 95th Cong., 1st Sess. 4, 8, *reprinted in* 1977 U.S. Code Cong. & Admin. News 1695, 1699, 1702.  The disclosures required by section 1692g(a) must be "set forth in a form and within a context that does not distort or obfuscate [their] meaning."  *Peter v. GC Servs. L.P.*, 310 F.3d 344, 348-49 (5th Cir. 2002).

A debt collector does not comply with section 1692g "merely by inclusion of the required debt validation notice; the notice Congress required must be conveyed effectively to the debtor."  *Swanson*, 869 F.2d at 1225; *accord Savino v. Computer Credit, Inc.*, 164 F.3d 81, 85 (2d Cir. 1998) ("[I]n order to comply with the requirements of section 1692g, more is required than the mere inclusion of the statutory debt validation notice in the debt collection letter—the required notice must also be conveyed effectively to the debtor."); *Miller v. Payco-General Amer. Credits, Inc.*, 943 F.2d 482, 484 (4th Cir.

14

1991).  ("Thus, a debt collector does not comply with § 1692g merely by inclusion of the required debt validation notice; the notice Congress required must be conveyed effectively to the debtor.") (internal quotation marks omitted).

Here, Southwest's initial communication with Ms. Reed was the letter dated April 28, 2012.  (Exhibit B ¶¶ 2–4); (See Exhibit C, SWC 0003–4) (showing that Southwest sent two written communications to Ms. Reed: one dated April 28, 2012 and one dated June 24, 2012).  However, although that communication contained a paragraph directed at Spanish-speakers, it failed to convey the required notices to the Spanish speaker. Furthermore, Southwest did not provide these notices in Spanish within five days of the initial communication.  (See Exhibit C).  Accordingly, Southwest violated 15 U.S.C. § 1692g(a). *see Chuway v. Nat'l Action Fin. Servs., Inc.*, 362 F.3d 944, 948 (7th Cir. 2004) ("if [a debt collection letter] would confuse a significant fraction of the persons to whom it is directed . . . the defendant will be liable.").

**C.    In Addition, Southwest's April 28, 2013 Communication Encourages Spanish Speakers To Call And Arrange Payment—Thereby Encouraging Them To Waive Their FDCPA Rights In Violation Of 15 U.S.C. § 1692g(b).**

Section 1692g(b) reads, in part: "Any collection activities and communication during the 30-day period may not overshadow or be inconsistent with the disclosure of the consumer's right to dispute the debt or request the name and address of the original creditor."  15 U.S.C. § 1692g(b).

As demonstrated *supra*, Southwest failed to convey the notices to the Spanish-speaking consumer.  Therefore, it does not take much to overshadow or encourage the

Spanish-speaking consumer to waive and/or overlook her FDCPA rights.  Here, that is easily established because Southwest did not convey to the Spanish-speaking consumer that she has a right to dispute the debt and instead, Southwest encouraged the Spanish-speaking consumer to call Southwest and *arrange payment*.  (Exhibit C, SWC 0003). Even if the Spanish speaker is able to read English, the eyes of the Spanish speaker will naturally gravitate to the Spanish statement, which again directs the Spanish speaker to make a payment, not invoke or obtain notification of their FDCPA rights.  This natural gravitation toward the Spanish text is inevitably increased for the fifteen million Spanish speakers who do not have a firm grasp on the English language and thus will rely on statements written in the native language.

### D.   Southwest Fails To Establish That It Is Entitled To Judgment As A Matter Of Law On Ms. Reed's 15 U.S.C. § 1692g(a),(b) Claims.

Southwest acknowledges that "[m]erely including the required notice in letters to consumers is not sufficient."  [Doc. 17 ¶ 14].  Further, Southwest fails to even argue that it conveyed the necessary notices to the Spanish-speaking consumer—the relevant perspective in this matter.  [*See* Doc 17 § (IV) (B)(b)].  Instead, Southwest attempts to avoid liability by misconstruing the facts and issues presented in *McMurray v. ProCollect, Inc.* and unpersuasively attempting to distinguish the only case directly on point in this matter—*Ehrich v. I.C. System, Inc.*

Southwest's reliance on *McMurray v. ProCollect, Inc.*, 687 3d. 665 (5th Cir. 2012) is completely misplaced.  *McMurray* was about statements written in English in a debt collector's initial communication that the plaintiff claimed overshadowed the proper

notices also written in English.  687 3d. 665.  The quotation cited in the opinion was not the translation of the Spanish line as Southwest states.  Rather, the *McMurray* opinion states:  "The letter then signs off, 'Cordially, Curt Bond/ProCollect, Inc.,' which is followed by **two lines** of text of the same size, but bolded: **a line** in Spanish, **and a line** stating, 'To pay your debt online please visit www.procollect.com.'".  *McMurray*, 687 F.3d at 667.  Simply, the Spanish language included in the letter in *McMurray* was not at issue and was not addressed by that court—even in dicta.  Accordingly, nothing in *McMurray* supports Southwest's motion for summary judgment.

Southwest also fails to distinguish this case from the *Ehrich* decision.  Southwest states that the court in *Ehrich* focused "on whether or not Spanish-speaking consumers represented the objective, least sophisticated consumer."  [Doc. #17].   That is correct— the *Ehrich* court found, just as this Court should, that the relevant perspective is from the least sophisticated, Spanish-speaking consumer.  Further, just as the Court should find here, in *Ehrich* the subjective ability of the plaintiff was irrelevant. *Ehrich*, 681 F.Supp.2d at 270.  Accordingly, the *Ehrich* court did not determine whether the plaintiffs could read Spanish before determining that Spanish statements violate the FDCPA. *Ehrich*, 681 F.Supp.2d at 268, fn. 2. ("It is not clear if plaintiffs also speak Spanish."). Southwest also attempts to distinguish that case due to the placement of the Spanish statement, but fails to explain how the placement affected the outcome of that case.  In fact, as stated before, a Spanish-speaker's eyes will naturally gravitate to the Spanish statements and therefore the placement is of little relevance.

Furthermore, the Spanish language included in Southwest's initial communication is worse than the one included in the *Ehrich* case.   In *Ehrich*, the Spanish statement simply directed the Spanish speaker to call if the Spanish-speaking consumer had questions on the account.   681 F.Supp.2d at 268 fn. 1 (translating the Spanish lines as "If you have some questions regarding your account call 800/2170-9420 and refer to your account number.").   Here, Southwest takes it a step further and directs the Spanish speaker to call and arrange payment. (Exhibit D, p. 3).

Thus, the undisputed facts of this matter demand a finding that Southwest's initial communication violated 15 U.S.C. § 1692g(a) and (b) as a matter of law.

## IX.   Southwest's "De Minimis" Argument Is Irrelevant To The Liability Determination; But Nonetheless, Southwest's Violations Are Far From "De Minimis."

Relying on a twenty-three year old case from the District of South Dakota, *Pearce v. Rapid Check Collection, Inc.*, 734 F.Supp.334 (D.S.D. 1990), Southwest argues that its violations of the FDCPA are "de minimis" or "technical violations" and therefore it should avoid liability.   [Doc #17 § D].   Although a *de minimis* violation is a factor in determining the amount of additional damages to be awarded to a successful FDCPA plaintiff, it is not a factor for determining whether a defendant has violated the FDCPA. *see* 15 U.S.C. § 1692k(b)(1) (stating that the nature of the noncompliance is a factor in determining the amount of additional damages, but not that it is a factor in determining liability);   *see also Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA*, 559 U.S. 573 (2010) ("When an alleged [FDCPA] violation is trivial, the 'actual damage[s]' sustained, § 1692k(a)(1), will likely be *de minimis or even zero*.   The [FDCPA] sets a cap

18

on 'additional' damages, § 1692k(a)(2), and vest courts with discretion to adjust such damages where a violation is based on a good-faith error, § 1692k(b)").

Nonetheless, Southwest's violations are egregious, not *de minimis*—perhaps why Southwest candidly admits that: "the [violative] Spanish language was removed after the collection letter was issued, but before the case was filed." [Doc #17]. Southwest failed to convey the notices required by 15 U.S.C. § 1692g(a) to a significant portion of the population—Spanish-speaking consumers. Even worse, Southwest admittedly targeted this portion of the population, and instead of conveying the required notices in Spanish, directed them to call Southwest and arrange payment. Why should English speakers receive the required notices while Spanish speakers are simply directed to call Southwest and arrange payment?

"Regardless of the language they speak, the FTC will protect the rights of all consumers." J. Howard Beales, III, Director of the FTC's Bureau of Consumer Protection, *FTC Press Release, First FDCPA Enforcement Action Specifically Protecting Spanish-Language Consumers*, http://www.ftc.gov/opa/2002/04/unitedrecovery.shtm (last visited April 12, 2012). To that end, in April 2002, a Houston, Texas based debt collector agreed to pay a $240,000.00 civil penalty for FDCPA violations perpetrated against Spanish-speaking consumers. *Id.* ("This is the FTC's first enforcement action against a debt collection company for allegedly violating the rights of Spanish-speaking consumers."). Simply, Spanish speakers, just like English speakers, have a right to be informed of their FDCPA rights, and therefore Southwest's violations—directing debt-

collection efforts to Spanish speakers without convey the necessary notices and instead encouraging them to waive their FDCPA rights—is far from "*de minimis*."

## IX.  Conclusion.

The undisputed facts of this case are simple and not in dispute.  Southwest sent Ms. Reed an initial communication in an attempt to collect an alleged debt that included language directed at Spanish-speaking consumers.  However, even though it was directed at Spanish speakers, Southwest failed to include the notices required by 15 U.S.C. § 1692g(a) in Spanish.  To make matters worse, rather than provide these notices in Spanish, Southwest directed the Spanish speaker to call to arrange payment and in the process waive the Spanish speaker's right to dispute the alleged debt.  These simple and undisputed facts demonstrate that Ms. Reed is entitled to summary judgment in her favor.

WHEREFORE, Ms. Reed respectfully requests the Court deny Defendant's motion for summary judgment.

Dated: April 15, 2013.

Respectfully submitted,

s/Noah D. Radbil
Noah D. Radbil
Texas Bar No. 24071015
Southern District Bar No. 1069583
Weisberg and Meyers, LLC
Two Allen Center
1200 Smith Street, Sixteenth Floor
Houston, TX 77002
Telephone:     (888) 595-9111 ext. 275
Facsimile:     (866) 565-1327
noah.radbil@attorneysforconsumers.com

*Attorney-in-Charge for Plaintiff*
MILDRED REED

## CERTIFICATE OF SERVICE

I certify that on April 12, 2013, the foregoing document was filed with the Court using CM/ECF, which will send notification of such filing to:

Robbie Malone
rmalone@malonelaw.com
ROBBIE MALONE, PLLC
Northpark Central, Suite 1850
8750 North Central Expressway
Dallas, TX 75231

s/Noah D. Radbil
Noah D. Radbil